Sean F. Kane (SK 4568)
DRAKEFORD & KANE LLC
475 Park Avenue South
15th Floor
New York, New York 10016
(212) 696-0010
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------x

| | |
|---|---|
| **TECHLAND, ROBERT BOSCH GMBH, ANIME VIRTUAL S.A., ZUXXEZ ENTERTAINMENT AG, KONTOR RECORDS, TOBIS FILM GMBH & CO. KG, OG-SOFT PRODUCTIONS and PEPPERMINT JAM RECORDS GMBH,** | : <br> : <br> : <br> : |
| Plaintiffs, | : Case No. 07 CIV 6583 |
| | : |
| DOES 1 – 15,752 | |
| Defendants. | : |

--------------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO TAKE IMMEDIATE DISCOVERY**

I.  **INTRODUCTION**

Plaintiffs, Techland, Robert Bosch GmbH, Anime Virtual S.A., Zuxxez Entertainment AG, Kontor Records, TOBIS Film GmbH & Co. KG, OG-Soft Productions and Peppermint Jam Records GmbH, seek leave of the Court to serve limited, immediate discovery on a third party Internet Service Provider ("ISP") to determine the true identities of various Doe Defendants, who are being sued for direct copyright infringement. Without such discovery, Plaintiffs cannot identify the Doe Defendants, and thus cannot pursue their lawsuit to protect their copyrighted works from repetitive, rampant infringement.[1]

As alleged in the complaint, the Doe Defendants, without authorization, used an online media distribution system *(e.g.,* a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works, distribute copyrighted works to the public, and/or make copyrighted works available for distribution to others. See Declaration of Sean F. Kane ("Kane Decl."), 16 and Ex. 1. Although Plaintiffs do not know the true names of the Defendants,[2] Plaintiffs, through agreement with Logistep AG, have identified each Defendant by a unique Internet Protocol ("IP") address assigned to that Defendant on the date and at the time of the Defendant's infringing activity. Id. Additionally, Plaintiffs have gathered evidence of the infringing activities. Id. ¶¶ 16-17. Plaintiffs, through Logistep, have made copies of portions of the copyrighted works each Defendant illegally distributed or made available for distribution, and have list of files that Defendants have made available to the public for distribution. Id. and Ex. 1.

Plaintiffs, through Logistep, have identified the ISP that provided Internet access to each Defendant by using a publicly available database to trace the IP address for each

---

[1]  Because Plaintiffs do not currently know the identity of any of the Defendants, Plaintiffs cannot ascertain any of the Defendants' position on this Motion.

Defendant. <u>Id.</u>, ¶¶ 12, 16. Here, the ISP is AOL LLC ("AOL"). <u>Id</u>. When given a Defendant's IP address and the date and time of infringement, an ISP quickly and easily can identify the name and address of the Doe Defendant *(i.e.,* the ISP's subscriber) because that information is contained in the ISP's subscriber activity log files. <u>Id.</u> ¶14.[3] Plaintiffs' experience is that ISPs typically keep log files of subscriber activities for only limited periods of time - sometimes for as little as weeks or even days - before erasing the data. <u>Id.</u> ¶ 22.

Plaintiffs now seek leave of the Court to serve limited, immediate discovery on AOL LLC to identify each Defendant. Plaintiffs intend to serve a Rule 45 subpoena on AOL LLC seeking each Defendant's true name, address, telephone number, e-mail address, and Media Access Control ("MAC") addresses. Once Plaintiffs learn a Defendant's identifying information, Plaintiffs will contact the Defendant and attempt to resolve the dispute. If the dispute is not resolved and it is determined that it would be more appropriate to litigate the copyright infringement claims in another jurisdiction, Plaintiffs may dismiss the particular Defendant from the present lawsuit and re-file in another jurisdiction, depending on the actual location of the individual Defendant. Without the ability to obtain the Defendant's identifying information, however, Plaintiffs may never be able to pursue their lawsuit to protect their copyrighted works from repeated infringement. <u>Id.</u> ¶ 22. Thus, the need for the limited, immediate discovery sought in this Motion is critical.

**II.   BACKGROUND**

The Internet and P2P networks have spawned an illegal trade in copyrighted works. By downloading P2P software, and logging onto a P2P network, an individual can upload

---

[2] When using a P2P system *(e.g.*, eMule, eDonkey*, KaZaA, Gnutella), Defendants typically use monikers, or user names, and not their true names. Kane Decl., , 7. Plaintiffs have no ability to determine a Defendant's true name other than by seeking the information from the ISP. <u>Id.</u> ¶¶ 11, 16-17.
[3] ISPs own or are assigned certain blocks or ranges of IP addresses. A subscriber gains access to the Internet through an ISP after setting up an account with the ISP. An ISP then assigns a particular IP address in its block or range to the subscriber when that subscriber goes "online." After reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify its subscribers by name. Kane Decl., ¶ 14.

3

(distribute) or download (copy), without authorization, countless copyrighted music and video files to or from any other Internet user worldwide. Id. ¶ 7. See *Universal City Studios, Inc. v. Reimerdes,* 111 F. Supp.2d 294, 331 (S.D.N.Y.), aff'd sub nom. *Universal City Studios. Inc. v. Corlex*, 273 F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made available multiplies rapidly as each user copying a file also becomes a distributor of that file). Until unfavorable copyright infringement court decisions virtually shut down the services, Napster and Grokster were previously the most notorious online media distribution systems. Notwithstanding the *Napster* and *Grokster* Court's decision, similar online media distribution systems emerged that have attempted to capitalize on the growing illegal market that Napster fostered. These include eMule, eDonkey, KaZaA, and Gnutella, among others. Kane Dec1., ¶ 6. Despite the continued availability of such systems, there is no dispute that the uploading and downloading of copyrighted works without authorization is copyright infringement. *Napster*, 239 F.3d at 1014-15; *In re Aimster Copyright Litig.,* 334 F.3d 643 (7th Cir. 2003), cert. denied. 124 S. Ct. 1069 (2004). Nonetheless, at any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted material. Kane Decl., ¶ 6. Several years ago it was reported that more than 2.6 *billion* infringing music files are downloaded monthly. L. Grossman, *It's All Free,* Time, May 5, 2003, at 60-69. There is no reason to thing that this number has significantly diminished in the intervening years.

The propagation of illegal digital copies over the Internet significantly harms copyright owners, and has had a particularly devastating impact on various sections of the entertainment industry. Kane Decl., ¶ 9. Evidence shows that the main reason for this precipitous drop in revenues in the music sector is that individuals are downloading music illegally for free, rather than buying it. See *In re Aimster Copyright Litig.,* 334 F.3d at 645.

4

In an effort to stop the rampant copyright infringement over the Internet, various rights holders have previously utilized the subpoena process codified in 17 U.S.C. § 5I2(h) of the Digital Millennium Copyright Act ("DMCA") to obtain the identities of infringers. Kane Decl., ¶ 14. Since 1998, ISPs routinely have disclosed to rights holders the true names of infringing users in response to DMCA subpoenas. Id. ¶ 15. On December 19, 2003, however, the Court of Appeals for the District of Columbia Circuit ruled that the DMCA subpoena provision could not be used in the D.C. Circuit to obtain information from ISPs performing so-called "conduit" functions. See *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.,* 351 F.3d 1229 (D.C. Cir. 2003) ("*Verizon*"). In *Verizon*, however, Verizon itself conceded that, as an alternative to using the DMCA subpoena process, Plaintiffs could simply file "John Doe" lawsuits and issue Rule 45 subpoenas to ISPs to obtain the true identities of infringing subscribers. Kane Decl., ¶ 15. Accordingly, Plaintiffs are pursuing this alternative in the present case.

**III.    ARGUMENT**

Courts routinely allow discovery to identify "Doe" defendants. See *Wakefield v. Thompson,* 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery); *Valentin v. Dinkins,* 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating dismissal; *pro se* plaintiff should have been permitted to conduct discovery to reveal identity of defendant); *Dean v. Barber,* 951 F.2d 1210, 1215 (l1th Cir. 1992) (error to deny plaintiffs motion to join John Doe defendant where identity of John Doe could have been determined through discovery); *Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss claim merely because defendant was unnamed; "Rather than dismissing the claim, the court should have ordered disclosure of the Officer Doe's identity"); *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity

5

of alleged defendants [are not] known prior to the filing of a complaint. . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants"); *Maclin v. Paulson,* 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity. . . plaintiff should have been permitted to obtain their identity through limited discovery"); *United Parcel Serv. of Am., Inc. v. John Does One Through Ten,* No. 03cv1639, 2003 WL 21715365, at *1 (N.D. Ga. June 13, 2003) (authorizing expedited discovery to determine the identity of defendants); see also *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 389 n. 2, 91 S.Ct. 1999 (1971) (noting, without discussion, the use of unnamed defendants ).

Indeed, in similar copyright infringement cases brought by other rights holders against Doe defendants infringing copyrights over P2P networks, courts, including this Court, have granted motions for leave to take expedited discovery. See Memorandum Opinion and Order, *UMG Recordings v. John Does 1-199,* Civ. Action No. 04-0093 (CKK) (D.D.C. Mar. 10, 2004) (attached hereto as Exhibit A); Order, *Virgin Records Am., Inc. v. Does 1-44*, No. 1:04-CV-438-CC (N.D. Ga. Mar. 3,2004) (attached hereto as Exhibit B); Order, *Motown Record Co., L.P. v. Does 1-252,* No. 1:04-CV-439-WBH (N.D. Ga. Mar. 1,2004**)** (attached hereto as Exhibit C); Order, *Elektra Entm't Group, Inc. v. Does 1-7,* Civ. Act. No. 04-607 (GFB) (D.N.J. Feb. 17,2004) (attached hereto as Exhibit D); Order, *Warner Bros. v. John Does 1-43,* No. 1:04-cv-00476-JES (S.D.N.Y. Feb. 10, 2004) (ruling from the bench); Order, *Sony Music Entm't, Inc. v. John Does 1-40,* No. 04 Civ. 473 (DC) (S.D.N.Y. Feb. 3, 2004) (attached hereto as Exhibit E); Order, *Capitol Records, Inc. v. John Does 1-250,* No. 04 CV 472 (LAK) (S.D.N.Y. Jan 27, 2004) (attached hereto as Exhibit F). This Court should follow the well-reasoned decisions of these courts.

Courts allow parties to conduct expedited discovery in advance of a Rule 26(f)

conference where the party establishes "good cause" for such discovery. See *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 275-76 (N.D. Ca!. 2002); *Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.,* 213 F.R.D. 418, 419 (D. Colo. 2003); *Entertainment Tech. Corp. v. Walt Disney Imagineering.* No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. 2003) (applying a reasonableness standard; finding that, absent extraordinary circumstances, "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances") (quotations omitted); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc..* 202 F.R.D. 612, 613-14 (D. Ariz. 200 1) (applying a good cause standard). Plaintiffs easily have met this standard.

First, good cause exists where, as here, the complaint alleges claims of infringement. See *Semitool*, 208 F.R.D. at 276; *Qwest Comm.*, 213 F.R.D. at 419 ("The good cause standard may be satisfied. . . where the moving party has asserted claims of infringement and unfair competition."); *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 CIV 3841, 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). This is not surprising since such claims necessarily involve irreparable harm to the plaintiff. Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* § 14.06[A], at 14-103 (2003); see also *Health Ins. Ass'n of Am. v. Novelli*, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted); see also *Taylor Corp. v. Four Seasons Greetings, LLC,* 315 F.3d 1034, 1042 (8th Cir. 2003); *ABKCO Music. Inc. v. Stellar Records, Inc.,* 96 F.3d 60, 66 (2d Cir. 1996).

Second, good cause exists here because there is very real danger the ISP will not long preserve the information that Plaintiffs seek. As discussed above, ISPs typically retain user

activity logs containing the information sought for only a limited period of time - sometimes for as little as weeks or even days before erasing the data. Kane Decl., § 22. If that information is erased, Plaintiffs will have *no* ability to identify the Defendants, and thus will be unable to pursue their lawsuit to protect their copyrighted works. Id. Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. See *Qwest Comm.,* 213 F.R.D. at 419; *Pod-Ners, LLC v. Northern Feed & Bean.* 204 F.R.D. 675, 676 (D. Conn. 2002) (allowing Plaintiff expedited discovery to inspect "beans" in defendant's possession because the beans might no longer be available for inspection if discovery proceeded in the normal course).

Third, good cause exists because the narrowly tailored discovery requests do not exceed the minimum information required to advance this lawsuit and will not prejudice Defendants. See *Semitool,* 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). Plaintiffs seek immediate discovery to identify the Defendants; information that may be erased very soon. Plaintiffs (who continue to be harmed by Defendants' copyright infringement, Kane Decl., § 9), cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding discovery) because there are no known Defendants with whom to confer (and thus, no conference is possible). There is no prejudice to the Defendants because Plaintiffs merely seek information to identify the Defendants and to serve them, and Plaintiffs agree to use the information disclosed pursuant to their subpoenas only for the purpose of protecting their rights under the copyright laws.

Fourth, courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward." *Semitool,* 208 F.R.D. at 277. Here,

8

the present lawsuit cannot proceed without the limited, immediate discovery Plaintiffs seek because there is no other information Plaintiffs can obtain about Defendants without discovery from the ISP. As shown by the Declaration of Sean F. Kane, Plaintiffs already have developed a substantial case on the merits against each infringer. Plaintiffs' complaint alleges a *prima facie* claim for direct copyright infringement. Plaintiffs have alleged that they own and have registered the copyrights in the works at issue, and that Defendants copied or distributed those copyrighted works without Plaintiffs' authorization. See Complaint. These allegations state a claim of copyright infringement. *Nimmer On Copyright* § 31.01, at 31-3 to 31-7; *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). In addition, Plaintiffs have copied portions of the infringing files each Defendant illegally distributed or made available for distribution, and have a copy of a more complete list of files Defendants have made available for distribution to the public. See Complaint Ex. A; Kane Decl., ¶¶ 16-17 and Ex. 1. Plaintiffs believe that virtually all of the infringing files have been downloaded, distributed and/or offered for distribution to the public without permission or consent of the respective copyright holders. Id., ¶ 17. Absent limited, immediate discovery, Plaintiffs will be unable to obtain redress for any of this infringement.

## IV. CONCLUSION

For the foregoing reasons, the Count should grant the Motion and enter an Order substantially in the form of the attached proposed Order.

Dated:  July 20, 2007                                     **DRAKEFORD & KANE LLC**
                                                          475 Park Avenue South
                                                          15th Floor
                                                          New York, New York 10016
                                                          (212) 696-0010


                                                          By:   _____/S/_____
                                                                Sean F. Kane, Esq. (SK 4568)

10